FILED

March 23, 2018

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

2:27 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **KENNETH SMITH,** | ) | **Docket No. 2017-07-0322** |
| **Employee,** | ) | |
| **v.** | ) | |
| **ARCHER DANIELS MIDLAND CO.,** | ) | **State File No. 60686-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **OLD REPUBLIC INS. CO.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL
## AND TEMPORARY DISABILITY BENEFITS

Mr. Smith requested medical and temporary benefits for a neck injury. Archer Daniels Midland (ADM) asserted the injury did not arise out of his employment. The Court heard the disputed issues on March 12, 2018, and holds Mr. Smith is entitled to the requested benefits.

### History of Claim

On July 14, 2016, Mr. Smith felt "excruciating" pain in his neck and left arm while beating on a grain bin with a hammer. ADM provided medical benefits. When initial conservative treatment failed, ADM provided an evaluation from Dr. John Brophy, a neurosurgeon.

On January 18, 2017, Dr. Brophy confirmed Mr. Smith's description of the incident. He diagnosed a probable left C7 radiculopathy secondary to spondylosis and considered Mr. Smith a candidate for a C6/7 anterior cervical discectomy and fusion. Mr. Smith agreed to surgery because of the severity of his pain.

On February 7, ADM's carrier corresponded with Dr. Brophy to obtain his causation opinion. It asked him to check one of two blanks based on "the change in legislation of 2014." First, the carrier proposed that Mr. Smith's spondylosis and the need for surgery was "MORE LIKELY THAN NOT or in other words . . . greater than 51%

1

caused by the incident." Second, it offered the converse: the spondylosis and necessity for surgery was "NOT PRIMARILY related to the [incident] but more personal in nature and/or preexisting." Dr. Brophy checked the latter. ADM then filed a Notice of Controversy and denied further treatment.

On August 1, Mr. Smith's counsel asked Dr. Brophy the following questions via letter:

1. Did Mr. Smith's work injury aggravate or exacerbate the pathology that had been previously clinically silent and asymptomatic?
2. Is the treatment that you have rendered thus far been reasonable, necessary and causally connected to the aggravation or exacerbation of the pathology that had been previously silent and asymptomatic?
3. Was the work injury more likely than not the cause of the aggravation or exacerbation of the pathology that had been previously clinically silent and asymptomatic?
4. Are your opinions stated to a reasonable degree of medical certainty?

Dr. Brophy responded "Yes" to all four questions, qualifying his answer to the third regarding the cause of the aggravation by writing, "based on patient history."

ADM corresponded with Dr. Brophy a second time. It quoted his responses to the previous letters and asked Dr. Brophy to respond either "did" or "did not" to the following questions:

1. Though the work injury more likely than not aggravated or exacerbated Mr. Smith's pathology, the work injury *did not* contribute more than fifty percent (50%) to the aggravation of the preexisting disease, condition, or ailment.
2. Though the treatment rendered was "causally connected" to the aggravation or exacerbation of pathology, the aggravation or exacerbation *did not* contribute more than fifty percent (50%) to the need for a cervical fusion.

(Emphasis indicates Dr. Brophy's answers).

The parties deposed Dr. Brophy on January 22, 2018. He confirmed Mr. Smith's description of the injury and testified that Mr. Smith reported no previous neck problems. He said Mr. Smith should remain "in his current light duty status" until surgery. He explained his responses to Mr. Smith's letter by saying, "[t]he reason for the surgery is his ongoing pain which he relates to his work injury. More than 51% of the problem, however, is related to the preexisting spondylosis." However, "the work injury is what

2

aggravated [the arthritic changes] to the point for him to need the medical treatment" based on "the patient's history." Later in the deposition, Dr. Brophy also said that, without the work aggravation, Mr. Smith "presumably" would not need the fusion surgery.

ADM asked Dr. Brophy if he still agreed with his response to the second letter that the aggravation did not contribute more than 50 percent to the need for surgery. He responded in the affirmative but added:

> When the law changed in 2014, Dr. Robert Snyder, the Medical Director of the State of Tennessee Workers' Compensation, came to Memphis to discuss the specifics of the law change to approximately ten subspecialists, orthopedic and neurosurgeons.
>
> At the end of the discussion, my question was will we be doing anterior cervical discectomies and fusions on 50 year olds with spondylosis of the cervical spine moving forward, and the answer was basically by definition the spondylosis is more than 51 percent of the problem; and, therefore, that was not going to occur.

Mr. Smith testified he worked at ADM for many years without restriction. After the injury, ADM accommodated his restrictions until April 2, 2017, when it placed him on disability status, despite the plant manager's earlier statement that ADM would "pay for everything" to treat his neck. ADM cross-examined Mr. Smith to the effect that it stopped accommodations because he complained of health issues other than his neck injury; Mr. Smith disagreed and maintained the reason he could not work was the neck injury. He requested the Court order ADM to pay for surgery and temporary disability benefits from April 2, forward.

For its part, ADM maintained its denial and argued it owed Mr. Smith no further benefits. It agreed Mr. Smith felt pain on July 14 but argued the spondylosis requiring surgery did not stem from the incident. ADM argued if the injury were a neck strain, then there would be no issue. However, because Mr. Smith did not show the incident caused an anatomic change, the surgery and resulting disablement are not work related.

**Findings of Fact and Conclusions of Law**

At this Expedited Hearing, Mr. Smith must present sufficient evidence to establish he would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017). Against that standard, he must show that the aggravation of his preexisting spondylosis was caused by a specific incident, identifiable by time and place of occurrence, and arising primarily out of his employment. Tenn. Code Ann. § 50-6-102(14)(A). The Court holds that he met his burden.

3

In so finding, the Court first notes that the parties do not dispute the first element of an "injury" as defined in the Workers' Compensation Law, the occurrence of a specific incident. Namely, Mr. Smith felt pain when beating a bin with a hammer. The Court finds Mr. Smith's testimony consistent with his description from the outset. Further, the Court finds his overall testimony credible. The Court notes by direct observation that he was forthcoming and self-assured. He explained the injury and its effects in a calm, straightforward manner and was sincere in his description of an inability to work. *See Kelly v. Kelly*, 445 S.W.3d 685, 695-696 (Tenn. 2014). Importantly, Mr. Smith's credibility also extends to his unrebutted testimony that he worked for the company for many years without injury or disablement until the incident of July 2016.

Mr. Smith's testimony bears directly on the Court's finding that he also satisfied the second element, namely that his injury arose out of his employment. An employee's assessment as to his own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Security, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *6 (Sept. 12, 2017). Standing alone, his own assessment is insufficient, but the Court finds the expert medical evidence supports Mr. Smith's testimony. Specifically, Dr. Brophy said in response to Mr. Smith's letter that, *"based on history,"* Mr. Smith's injury more likely than not caused an aggravation of the previously asymptomatic spondylosis. Additionally, Dr. Brophy testified in his deposition that Mr. Smith had no prior neck problems and that, *"by history,"* the incident at ADM is what led to the need for medical treatment. The Court finds Dr. Brophy's opinions support a finding that Mr. Smith would not need the requested surgery, or be disabled from work, but for the incident of July 2016.

Mr. Smith argued *Vercek v. YRC, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 39 (June 6, 2017), supports this finding. The Court agrees. There, the employer argued a surgery to correct an underlying degenerative condition was not compensable. However, the Appeals Board held that the treating physician found the employee's underlying degenerative condition was asymptomatic before the work incident and, in the absence of the aggravation, the physician would not have recommended the treatment. Taken as a whole, the evidence supported a finding that "the compensable aggravation of [the] employee's previously asymptomatic condition led directly to the recommendation for surgery." *Id.* at *8. The Court finds Dr. Brophy's testimony, *taken as a whole,* supports a similar finding that a work-related aggravation led to Mr. Smith's need for treatment.

Further, an internal inconsistency in the hypothetical presented by ADM in its second letter supports the Court's finding. Specifically, ADM posited the following option: "Though the work injury *more likely than not* aggravated or exacerbated Mr. Smith's pathology, the work injury did not contribute more than fifty percent (50%) to the aggravation of the preexisting disease, condition, or ailment." (Emphasis added). By definition, an aggravation arises out of the employment if it is "shown to a reasonable

4

degree of medical certainty" to have contributed more than fifty percent to the disablement or need for medical treatment. Tenn. Code Ann. § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that the aggravation "is more likely than not" the cause of the injury. *Id.* at (14)(D). Thus, when Dr. Brophy said to a reasonable degree of medical certainty that the July 2016 incident injury was "more likely than not" the cause of the aggravation, Mr. Smith established a greater than fifty percent contribution to his disablement and need for medical treatment.

Finally, Dr. Brophy's testimony reveals he based his opinion in large part, if not in totality, upon his interpretation of the legal definition of a compensable injury. Indeed, he directly cited his discussion at a seminar with the Bureau's Medical Director to the effect that spondylosis in fifty-year-olds is "by definition" not a work-related condition. Regardless of the purported colloquy between the physicians, any physician's opinion as to whether a condition is or is not an "injury" is improper, as it calls for a legal conclusion rather than a fact opinion. An expert witness may not express an opinion as to legal conclusions, as this is a judicial function. *Coffey v. City of Knoxville*, 866 S.W.2d 516, 519 (Tenn. 1993). Here, the Court performs its judicial function and holds the facts presented by Mr. Smith support a conclusion that he would likely prevail at a hearing on the merits that the aggravation arose primarily out of his employment.

Thus, the Court holds Mr. Smith is entitled to the requested benefits, including continued payment of medical benefits up to and including the recommended surgery. Regarding temporary disability, Dr. Brophy did not totally restrict Mr. Smith from working. Instead, he said he might remain on light duty. Therefore, Mr. Smith is entitled to temporary partial disability, which is payable when an employee might resume some gainful employment but has yet to reach maximum medical improvement. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016).

**IT IS, THEREFORE, ORDERED** as follows:

1. ADM shall continue to provide reasonable and necessary medical treatment under Tennessee Code Annotated section 50-6-204(a)(1)(A), including the recommended surgery. Dr. Brophy or Mr. Smith shall provide the bills to ADM.

2. ADM shall pay temporary partial disability benefits from April 2, 2017, to the present and ongoing at the stipulated rate of $597.23 per week. Benefits from April 2, 2017, to March 12, 2018, a period of forty-nine weeks and one day, are payable in a lump sum of $29,347.88. ADM shall continue these payments until Mr. Smith either returns to work or is placed at maximum medical improvement. Mr. Boyd is entitled to a fee of twenty percent of the award.

3. **This matter is set for a telephonic Status Hearing on Tuesday, June 26, 2018,**

at **9:30 a.m. Central Time. You must call toll-free at 855-543-5038 to participate in the hearing.** Failure to call in may result in a determination of the issues without your further participation.

**ENTERED this the 23rd day of March, 2018.**

_____

Judge Allen Phillips
Court of Workers' Compensation Claims

**APPENDIX**

Exhibits:

1. Deposition of Dr. John Brophy
2. Medical Records of Redden Total Therapy

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response to Expedited Hearing

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of March, 2018.

| Name | Via Email | Service sent to: |
|---|---|---|
| Jeff Boyd, Esq., | X | jboyd@borenandboyd.com |
| Attorney for Employee | X | dmyles@borenandboyd.com |
| Vicki Moffett Cruzen, Esq., | X | vmoffettcruzen@shuttleworthwilliams.com |
| Attorney for Employer | X | jmartin@shuttleworthwilliams.com |

_____

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

6